IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STEVEN STRICKLAND and MEGAN MITCHELL, | ) ) ) |
| Plaintiffs, | ) Civ. No. 05-695-PK ) |
| v. | ) **FINDINGS AND RECOMMENDATION**/ ) **ORDER** ) |
| EVERGREEN MARINE CORP. (TAIWAN) LTD. (EVERGREEN LINE), a foreign corporation; P.T. ASURANSI RAMA SATRIA WIBAWA, a foreign corporation; ABCO INTERNATIONAL FREIGHT (USA), INC., a foreign corporation; THE M/V EVER DELUXE, Official No. 25287-98A, her engines, apparel, electronics, tackle and appurtenances, etc.; and MMC TRANSPORTATION, INC., a California corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**PAPAK, Magistrate Judge:**

In this admiralty action, plaintiffs Steven Strickland and Megan Mitchell bring claims for negligence and breach of contract

1  - FINDINGS AND RECOMMENDATION

under common law and the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. app. §§ 1300-1315.  The defendants are Evergreen Marine Corp. (Taiwan) Ltd.; P.T. Asuransi Rama Satria Wibawa (P.T. Asuransi)[1]; Abco International Freight (USA) Inc. (Abco); the M/V EVER DELUXE; and MC[2] Transportation, Inc.  Plaintiffs allege that they purchased custom-carved wood furnishings (the goods) from an Indonesian manufacturer; that they hired defendants to transport the goods from Indonesia to Ashland, Oregon; and that on arrival in Ashland the goods were ruined by water damage.

Abco moves for summary judgment, contending that plaintiffs' claims against it are time-barred.  Plaintiffs move for summary judgment on Abco's affirmative defenses, and move to compel production of documents from Abco.

I recommend granting Abco's motion for summary judgment, and denying plaintiffs' motion for summary judgment as moot.  I deny plaintiffs' motion to compel.

### Abco's Motion for Summary Judgment

I. **Background**

Plaintiffs purchased more than 4,700 carved hardwood pieces,

---

[1] In September 2005, this court entered default judgment for $40,871.24 and attorney's fees against defendant P.T. Asuransi, an insurer.

[2] Although the second amended complaint names "MMC" Transportation, the record indicates that the company's name is MC Transportation.  See, e.g., Dudrey Supp. Decl., Ex. K (freight bill issued by MC Transportation).

2 - FINDINGS AND RECOMMENDATION

including doors, windows, gable ornaments, exterior molding, and shingles, from a manufacturer in Indonesia.  Plaintiffs planned to use the pieces to restore a Victorian house in Ashland.

In March 2004, plaintiff Megan Mitchell hired Abco, which has an office in California, to arrange for the shipment of the goods from Indonesia to Ashland.  Mitchell dealt by email with Patrick Chui, Abco's west coast general manager.  Abco issued a bill of lading to Mitchell on Abco's standard form.

In April 2004, the goods were loaded in Indonesia into a container provided by defendant Evergreen Marine Corp.  An agent for Abco contracted with World Way International, Inc. to book the container for shipment on the M/V KUO YU to Kaohsiung, Taiwan.  From Taiwan, defendant vessel M/V EVER DELUXE transported the container to the Port of Oakland.

The container was discharged at the Port of Oakland on May 9, 2004.  After examining the goods, neither the U.S. customs inspector, nor the agent for an independent contractor, Pacific Coast Container, noted any problems, although there was insect damage to crates holding the goods.  U.S. Customs released the container on May 26, 2004.

Abco hired defendant MC Transportation to transport the goods by truck from the Port of Oakland to Ashland.  When the container was unpacked in Ashland on May 27, 2004, plaintiffs discovered that the goods were ruined by water damage.  A July

3 - FINDINGS AND RECOMMENDATION

2004 surveyor's report by Woodbridge Marine found that "damages sustained are the result of exposure of the shipment to a fresh water wetting, apparently condensation, occurring during the voyage of importation and while the shipment was in the care and custody of the Ocean Carrier and/or their agents." Dudrey Supp. Decl., Ex. I, at 9. Plaintiffs seek more than $40,000 in damages, including shipping, customs and storage.

Plaintiffs' initial complaint, filed on May 16, 2005, did not name Abco as a defendant. Plaintiffs first named Abco as a defendant in an amended complaint filed on August 29, 2005, more than a year after plaintiffs discovered that the goods were damaged on May 27, 2004.

## II. Standards

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The court should resolve reasonable doubts about the existence of an

4 - FINDINGS AND RECOMMENDATION

issue of material fact against the moving party.  <u>Id</u>. at 631.
The court should view inferences drawn from the facts in the
light most favorable to the nonmoving party.  <u>Id.</u> at 630-31.

**III.  Discussion**

Abco contends that plaintiffs' claims are time-barred because plaintiffs filed their claims against Abco more than one year after plaintiffs discovered the damage to the goods.  Abco relies in part on COGSA's one-year statute of limitations.  <u>See</u> 46 U.S.C. app. § 1303(6) ("In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered.").  However, COGSA applies only from "tackle to tackle," that is, from when goods are loaded onto the vessel until the goods are discharged from the vessel.  46 U.S.C. app. § 1301(e).  Because it is unclear when the goods at issue here were damaged, Abco relies on paragraph 1(a) of the bill of lading, which provides that COGSA's provisions "shall govern before loading on and after discharge from the vessel and throughout the entire time the Goods are in the custody of the Carrier."  Bills of lading often include such a provision, which is called a "Clause Paramount."  <u>See</u> <u>Schramm, Inc. v. Shipco Transport, Inc.</u>, 364 F.3d 560, 566 (4th Cir. 2004) ("Parties to a bill of lading are entitled to contract for extensions of COGSA beyond its

5  - FINDINGS AND RECOMMENDATION

customary scope, and specifically to the periods 'prior to the loading on and subsequent to the discharge from the ship on which the goods are carried by sea.'") (quoting 46 U.S.C. app. § 1307); Mori Seiki USA, Inc. v. M.V. Alligator Triumph, 990 F.2d 444, 446 (9th Cir. 1993).

Plaintiffs contend that COGSA's statute of limitations does not apply because Abco acted as a freight forwarder rather than a carrier. Plaintiffs also contend that the terms of the bill of lading are not binding on them because the bill of lading provided to them by Abco was illegible.

### A. Abco Acted as an NVOCC

The parties dispute Abco's role in arranging the shipment. Abco contends that it acted as a "non-vessel-operating common carrier," or NVOCC, rather than a freight forwarder. An NVOCC is a carrier in relation to the shipper, although it is a shipper in relation to the vessel. See International Fire & Marine Ins. Co., Ltd. v. Silver Star Shipping America, Inc., 951 F. Supp. 913, 915-16 (C.D. Cal. 1997). Carriers, including NVOCCs, are subject to COGSA, while freight forwarders generally are not subject to COGSA. See Prima U.S. Inc. v. Panalpina, Inc., 223 F.3d 126, 129-30 (2d Cir. 2000).

I agree with Abco that it acted as an NVOCC in its dealings with plaintiffs. Abco is licensed by the Federal Maritime Commission (FMC) as an NVOCC, and accordingly filed a tariff with

6 - FINDINGS AND RECOMMENDATION

the FMC. Abco issued a bill of lading to plaintiffs, which a freight forwarder generally would not do. See Prima U.S., 223 F.3d at 129 ("Unlike a carrier, a freight forwarder does not issue a bill of lading, and is therefore not liable to a shipper for anything that occurs to the goods being shipped."); Scholastic, Inc. v. M/V Kitano, 362 F. Supp. 2d 449, 455 (S.D.N.Y. 2005) ("The most fundamental difference between a freight forwarder and an NVOCC is that an NVOCC issues a bill of lading."). The bill of lading, which is the contract between the carrier and the shipper (here, plaintiffs are shippers), defines the carrier's obligations to the shipper. Scholastic, 362 F. Supp. 2d at 455-56. As Abco notes, a shipper whose goods arrived damaged would normally prefer to bring an action against the carrier, including an NVOCC, rather than a freight forwarder, because an "NVOCC is strictly liable for any damage caused to cargo that has been shipped pursuant to the bill of lading issued by it." Limited Brands, Inc. v. UTI U.S., Inc., 2005 WL 1629777, *4 (S.D. Ohio 2005). In contrast, a freight forwarder is liable only for its own negligence. Scholastic, 362 F. Supp. 2d at 456.

Plaintiffs rely on the similarity of the tasks performed by freight forwarders and NVOCCs. Both arrange for shipments on vessels although they do not actually operate any vessels. In 1998, Congress created the category of "ocean transportation intermediary," which includes either "an ocean freight forwarder

7 - FINDINGS AND RECOMMENDATION

or a non-vessel-operating common carrier." 46 U.S.C. app. § 1702(17). The statute defines the terms "ocean freight forwarder" and NVOCC:

> (A) "ocean freight forwarder" means a person that--
>
> (i) in the United States, dispatches shipments from the United States via a common carrier and books or otherwise arranges space for those shipments on behalf of shippers; and
>
> (ii) processes the documentation or performs related activities incident to those shipments; and
>
> (B) "non-vessel-operating common carrier" means a common carrier that does not operate the vessels by which the ocean transportation is provided, and is a shipper in its relationship with an ocean common carrier.

Id.

Plaintiffs argue that under the statutory definition, Abco "was not acting as an ocean transportation intermediary/freight forwarder" because the shipment was from Indonesia rather than from the United States.[3] The statute defines the role of an ocean freight forwarder as "dispatch[ing] shipments <u>from</u> the United States via a common carrier." Id. (emphasis added). Plaintiffs ignore, however, the two separate categories of "ocean transportation intermediary," NVOCCs and ocean freight forwarders. Unlike ocean freight forwarders, NVOCCs are not limited to arranging for shipments from the United States.

---

[3]Plaintiffs maintain that "defendant Abco was simply acting as a freight forwarder in the plain meaning of the term."

8 - FINDINGS AND RECOMMENDATION

Because Abco arranged to ship plaintiffs' goods from Indonesia to the United States, and issued a bill of lading to plaintiffs, I conclude as a matter of law that Abco acted as an NVOCC, not as an ocean freight forwarder.

Plaintiffs argue that Abco is estopped from asserting its status as an NVOCC. Plaintiffs allege that Abco's website describes Abco as a freight forwarder, and Mitchell states that she was told that Abco was a freight forwarder. Abco disputes these assertions.

I conclude that this dispute is irrelevant to whether Abco acted as an NVOCC on this shipment. Assuming, for purposes of this motion only, that Abco did describe itself to plaintiffs as a freight forwarder, Abco should not be estopped from asserting NVOCC status. Generally, for estoppel to apply, there must be evidence that the defendant misled the plaintiff into a reasonable but mistaken belief. See, e.g., Mikinberg v. Baltic Steamship Co., 998 F.2d 327, 331 (2d Cir. 1993) (estoppel regarding application of COGSA's statute of limitations). There is no evidence that plaintiffs were aware of the difference between a freight forwarder and an NVOCC, or that, if plaintiffs had been aware of the difference, it would have affected their decision to contract with Abco. Nor have plaintiffs presented evidence that they relied to their detriment on a mistaken belief that Abco acted as a freight forwarder. See Saba Shipyard Sdn.

9 - FINDINGS AND RECOMMENDATION

Bhd. v. M/V Harbel Topper, 178 F.3d 400, 406 (5th Cir. 1999) (detrimental reliance required for equitable estoppel to apply regarding defendant's status as carrier or freight forwarder).

Plaintiffs argue that because Abco hired another NVOCC, World Way International, Inc., to book the goods for shipment from Indonesia to Taiwan, Abco could not also be an NVOCC. However, as Abco points out, plaintiffs cite no authority for their argument that only one NVOCC may participate in a shipment. Nor have plaintiffs shown that they were prejudiced by Abco's decision to hire another NVOCC.

## II.  The Bill of Lading

Because Abco acted as an NVOCC, COGSA, including COGSA's one year statute of limitations, applies to the shipment at issue here from its loading in Indonesia to its discharge from the vessel at the Port of Oakland.[4]  46 U.S.C. app. § 1301(e). However, it is unclear whether the goods were damaged before or after being discharged at the Port of Oakland.  This court therefore must determine whether the Clause Paramount in the bill of lading applies, thereby extending COGSA's terms beyond the discharge of the goods at the Port of Oakland.

The Clause Paramount provides that the shipment is subject to COGSA "throughout the entire time the Goods are in the custody

---

[4]This court could reach the same conclusion even if Abco was not an NVOCC because the bill of lading specifically provides that the shipment is subject to COGSA.

10 - FINDINGS AND RECOMMENDATION

of the Carrier." Abco has a published tariff that includes the Clause Paramount.

Plaintiffs argue that the bill of lading does not cover transportation by land from Oakland to Ashland because the bill of lading provides coverage from Indonesia to "Oakland, Oregon." Plaintiffs contend that this means the bill of lading terminated in Oakland, California. However, the parties knew where plaintiffs wanted the goods delivered, as shown by the actual delivery of the goods to plaintiffs in Ashland. The bill of lading correctly states plaintiffs' address in the space for "Consigned To." The apparent typographical error in referring to Oakland, Oregon[5] does not affect my construction of the bill of lading.

Plaintiffs contend that the terms on reverse side of the bill of lading are illegible, and therefore do not bind them. Plaintiffs have submitted for the court's review the bill of lading that they received from Abco, which is stamped "Original" and "Third Original."

The face of the bill of lading states, in easily legible type, "The goods to be delivered at the above mentioned port of discharge or place of delivery, whichever is applicable, subject always to the exceptions, limitations, conditions and liberties set out on the reverse side hereof, to which the Shipper and/or

---

[5] There is in fact an Oakland, Oregon, in Douglas County.

11 - FINDINGS AND RECOMMENDATION

Consignee agree to accepting this Bill of Lading." The terms on the reverse side of the bill of lading are printed in light blue ink using a small font.

As in another case addressing an arguably illegible bill of lading, "although the print on the rear side of the bill is very small, it is not at all blurry and can, albeit with some eye strain, be read without any magnification." <u>Cigna Ins. Asia Pacific Ltd. v. Expeditors Int'l of Washington, Inc.</u>, 2001 WL 34037360, *2 (C.D. Cal. 2001) (bill of lading not defective for illegibility) (citing <u>Mori Seiki v. M.V. Alligator Triumph</u>, 990 F.2d 444, 449-50 (9th Cir. 1993)). Similarly, here the terms on the reverse of the bill of lading are legible, although just barely so. (I note that on the copy of the bill of lading initially submitted to the court, the provisions on reverse side are not fully legible, apparently because the photocopier used could not properly reproduce small, light blue type.)

I will assume, however, for purposes of this motion only, that the reverse of the bill of lading provided to plaintiffs is not legible. Plaintiffs state that they are not experienced shippers and had no idea what terms were customarily included in bills of lading. Mitchell states that "no one from defendant Abco ever advised me that I should be familiar with the terms and conditions, should read them, or that they would be significant in any way in defining my relationship with defendant Abco."

12 - FINDINGS AND RECOMMENDATION

However, the front of the bill of lading itself states, in easily legible type, that the goods are to be delivered "subject always to the exceptions, limitations, conditions and liberties set out on the reverse side hereof, to which the Shipper and/or Consignee agree to in accepting this Bill of Lading." This statement put plaintiffs on notice that the provisions on the reverse of the bill of lading are important.

Plaintiffs cite decisions regarding lack of notice of limitations on the carriers' liability per package. However, lack of notice of a limitation on liability is much different from lack of notice of the time limit for bringing suit. As Judge Friendly noted in <u>Leather's Best, Inc. v. S.S. Mormaclynx</u>, 451 F.2d 800, 817 (2d Cir. 1971), "a limitation of liability invalid under COGSA affects the conduct of the shipper before the accident by causing him either to take out more insurance than the statute contemplated or to forego such insurance on the basis of the clause's invalidity, whereas the decision as to when suit must be brought is made after the loss, with full opportunity to obtain the advice of counsel." The shipper has one year from the date of the loss to seek legal advice and to obtain, if necessary, a more legible copy of the bill of lading, or a copy of the tariff, which must be publicly available and must contain the same terms as the bill of lading. <u>See</u> 46 U.S.C. app. § 1707(a).

13 - FINDINGS AND RECOMMENDATION

Although it may seem harsh to enforce an arguably illegible statute of limitations against inexperienced shippers, under the circumstances here, the result is not unfair.  Plaintiffs did retain counsel and filed their initial complaint before the one-year limit had expired.  For reasons not clear on this record, plaintiffs' first complaint did not name Abco as a defendant, even though plaintiffs dealt directly with Abco in arranging the shipment and the bill of lading itself clearly gave Abco's address and telephone and fax numbers.  There is no evidence that Abco tried to conceal the limitation provision from plaintiffs, or that Abco lulled plaintiffs into a false sense of complacency regarding the time limit for bringing an action against it.  Cf. Austin, Nichols & Co. v. Cunard Steamship Ltd., 367 F. Supp. 947, 949 (S.D.N.Y. 1973) ("the basic question in determining whether an estoppel exists is whether plaintiff has been justifiably misled by defendant's actions, whether defendant's actions have lulled plaintiff into a false sense of security and so induced him not to institute suit in the requisite time period").

In addition, as Abco notes, even assuming that the terms of the bill of lading were not legible, plaintiffs were on constructive notice of the Clause Paramount because of Abco's published tariff, which also contains the Clause Paramount extending COGSA's application to delivery at the final destination.  See Port of Tacoma v. S. S. Duval, 364 F.2d 615,

14 - FINDINGS AND RECOMMENDATION

617 (9th Cir. 1966) (filed tariff gives constructive notice of all provisions required by law to be included in a tariff); <u>Insurance Co. of North America v. Puerto Rico Marine Management, Inc.</u>, 768 F.2d 470, 477 (1st Cir. 1985) (shippers bound "by all the incorporated terms and conditions contained within a long-form bill of lading filed with the FMC").

There is one further reason for enforcing the terms of the bill of lading. Plaintiffs' claim for breach of contract against Abco must be based on the contract between plaintiffs and Abco, which is the bill of lading. By bringing this action, plaintiffs are deemed as a matter of law to have accepted the bill of lading. See <u>Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty</u>, 408 F.3d 1250, 1254 (9th Cir. 2005) ("a cargo owner 'accepts' a bill of lading to which it is not a signatory by bringing suit on it") (citing <u>All Pac. Trading, Inc. v. Vessel M/V Hanjin Yosu</u>, 7 F.3d 1427, 1432 (9th Cir. 1993) (initiation of breach of contract suit was "acceptance of the terms of the Hanjin bills of lading").

**Plaintiffs' Motions for Summary Judgment and to Compel**

Plaintiffs seek summary judgment on ten of Abco's eleven affirmative defenses. If I am correct that Abco's motion for summary judgment should be granted, then plaintiffs' motion for summary judgment is moot. If my recommendation is not adopted, then plaintiffs' motion should be resolved on the merits.

Plaintiffs also move to compel production of documents.

15 - FINDINGS AND RECOMMENDATION

Plaintiffs have not shown that the documents they seek could change this court's determinations that Abco acted as an NVOCC and that the one-year statute of limitations was enforceable against them.

## CONCLUSION

Abco's motion for summary judgment (#65) should be granted. Plaintiffs' motion for summary judgment (#44) should be denied as moot. Plaintiffs' motion to compel (#35) is denied.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due January 16, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 29th day of December, 2006.

                                      __/s/ Paul Papak____
                                      PAUL PAPAK
                                      UNITED STATES MAGISTRATE JUDGE